UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LARRY M. JAMES,

    Plaintiff,

 v.            Case No. 24-cv-1108-pp

AURORA HEALTH CARE
and ERNEST P. LUCZOWSKI,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (DKT. NO. 7), DENYING PLAINTIFF'S ALTERNATIVE REQUEST FOR LEAVE TO AMEND PLEADINGS (DKT. NO. 11 AT 14), DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO ISSUE SUBPOENA FOR PRODUCTION OF RELEVANT RECORDS/DOCUMENTS (DKT. NO. 12), DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION AND DISMISSING CASE**

  On August 30, 2024, the plaintiff, who is representing himself, filed a complaint against defendants Aurora Health Care and Dr. Ernest Luczowski purporting to bring a claim under the False Claims Act (FCA). He alleges that he did not consent to a 2021 surgery on his left foot, which he contends was unnecessary. Dkt. No 1 at 1-3. He also brings state law claims for "negligent hospital credentialing," intentional medical battery and medical malpractice in connection with that surgery. <u>Id.</u> at 3-10. The plaintiff filed an executed summons stating that someone named James Pancratz served Dr. Ernest Luczowski by certified mail, dkt. no. 2, and that Pancratz served Aurora Health (through CT Corporation System) by U.S. mail, dkt. no. 4. The plaintiff paid the filing fee. Dkt. No. 1.

1

On October 10, 2024, the defendants filed a motion to dismiss under Rule 12(b)(2) and 12(b)(5) for lack of personal jurisdiction due to insufficient service of process and under Rule 12(b)(6) for failure to state a claim. Dkt. No. 8 at 1. Because the plaintiff has not complied with the FCA and because the FCA is the only basis for this court's exercise of federal subject-matter jurisdiction, the court will dismiss the case without prejudice.

I.  **Defendants' Motion to Dismiss (Dkt. No. 8)**

   A.  Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) challenges the court's personal jurisdiction over a defendant. The court takes the facts asserted in the complaint as true; the complaint need not allege facts demonstrating the existence of personal jurisdiction, but once the defendant moves to dismiss the complaint for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." Curry v. Revolution Labs., LLC, 949 F.3d 385, 392 (7th Cir. 2020) (quoting Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003)).

A party may use Federal Rule of Civil Procedure 12(b)(5) to enforce service-of-process requirements. If a plaintiff does not meet his or her burden to demonstrate that the court has jurisdiction through effective service, the court must dismiss or specify a time frame in which the plaintiff must serve the defendants. Fed. R. Civ. P. 4(m).

2

Finally, Rule 12(b)(6) allows a party to assert by motion that the complaint fails to state a claim for which a federal court can grant relief. "A Rule 12(b)(6) motion tests 'the legal sufficiency of the complaint,' as measured against the standards of Rule 8(a)." Gunn v. Cont'l Cas. Co., 968 F.3d 802, 806 (7th Cir. 2020) (quoting Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 526 (7th Cir. 2015)). A complaint need not include detailed factual allegations, but it must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

In ruling on a Rule 12(b)(6) motion, the court draws all reasonable inferences in the plaintiff's favor, Roberts v. City of Chicago, 817 F.3d 561, 564 (7th Cir. 2016). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" so "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. When considering whether a plaintiff has stated a claim, the court "may consider documents attached to the pleadings so long as the documents are referred to in the complaint and central to the plaintiff's claims." Doe v. Columbia Coll. Chi., 933 F.3d 849, 854 (7th Cir. 2019).

B. The Complaint (Dkt. No. 1)

The plaintiff alleges that "for many years prior to 9/9/2021, hundreds to thousands medically unnecessary and/or unconsented surgeries had been performed in the DEFENDANT AURORA HEALTH CARE'S greater Milwaukee medical centers by several AURORA HEALTH CARE physicians; including but not limited to Dr. Scott Kamelle and Defendant Ernest P. Luczowski, DPM."[1] Dkt. No. 1 at 2, ¶3. According to the plaintiff, the "vast majority" of medically unnecessary/non-consensual surgeries Dr. Kamelle performed were gynecological surgeries with "unnecessary/unconsented use" of ureteral stents, ACell mesh and MicroMatrix. Id. He alleges that the "numerous" unnecessary/non-consensual surgeries performed by Dr. Luczowski were "extremely high risk and complex podiatric surgeries with unnecessary use of extremely expensive medical braces and splints." Id. The plaintiff alleges that Aurora knew of the unnecessary/non-consensual surgeries and received millions of dollars from these surgeries, resulting in "countless serious post-operative complications and a few deaths." Id. at ¶4.

The plaintiff alleges that on September 9, 2021, Dr. Luczowski "was knowingly allowed to perform the subject high risk and complex medically unnecessary and expensive podiatric surgery" at Aurora's Burlington Medical Center; the plaintiff says that Aurora received revenue for the surgery in violation of the False Claims Act. Id. at ¶5. He avers that the surgery was

---

[1] The caption names Dr. Ernest Luczowski as the defendant, but the body of the complaint refers to him both as Dr. Luczowski and Dr. Kuczowski.

4

performed without his knowledge or consent. Id. at ¶6. The plaintiff alleges that as a result of that surgery, he has suffered a "significant partial amputation of his operated foot, permanent significant disabilities, extensive pain and suffering as well as substantial wage loss and related economic issues." Id. at ¶7. He asserts that he is bringing this case under the FCA for his "permanent and significant injuries, disfigurement, disability and substantial economic damages" caused by the surgery, which allegedly was "intentionally condoned and ratified by Defendant AURORA HEATH CARE for numerous years before the said subject 9/09/21 surgery as party of an outrageous and longstanding practice of countless unnecessary/unconsented medical services that were unconditionally supported and lawfully benefited" by Aurora. Id. at 3, ¶8.

The plaintiff asserts a second claim for "negligent hospital credentialing." Id. at 3. According to the plaintiff, although Aurora's medical staff bylaws required that all staff physicians with surgical privileges must be either board certified or board eligible, Dr. Luczowski never was board certified as a podiatrist. Id. at 4, ¶6. The plaintiff alleges that Aurora failed to properly review, monitor, regulate, supervise and otherwise exercise reasonable "skill and care" in selecting, retaining, credentialing and assessing its staff. Id. at 4-5, ¶8. And he alleges that Dr. Luczowski performed the September 9, 2021 surgery in wilful violation of Aurora's bylaws and "JCAHO standards." Id. at 4, ¶7.

The plaintiff's third claim alleges that that Aurora and Dr. Luczowski committed intentional medical battery because on September 9, 2021, the

5

Case 2:24-cv-01108-PP    Filed 01/08/25    Page 5 of 19    Document 15

plaintiff had been admitted only to undergo a "Partial 1st Ray Amputation Left Foot," but Dr. Luczowski performed a "Removal/excision of Tibial & Fibular Sesamoid bones." Id. at 6, ¶¶4, 5. The plaintiff maintains that less than two months earlier, he had expressly refused the surgery Luczowski had performed, "due to its serious surgical risks and economic concerns . . . ." Id. at 7, ¶6.

The plaintiff's fourth claim is a medical malpractice claim arising under state law. Id. at 8. He asserts that Dr. Luczowski "failed to possess and use the skill ordinarily used in similar cases and circumstances by a reasonably well-qualified physician." Id. at ¶4. The plaintiff alleges that because of this, Luczowski breached "the applicable standard of care" by failing to give the plaintiff the proper informed consent for the surgery, for failing to obtain a bone scan prior to the surgery and for willfully performing the surgery without the plaintiff's knowledge or consent when it was not medically necessary. Id. at 8-9, ¶4. The plaintiff accuses Aurora of breaching its duty of care by failing to (1) "implement a safeguard process to ensure that surgical patients execute the correct surgical consent form," (2) investigate and modify the incorrect operative order to match the consent form and (3) monitor operative procedures to ensure compliance with hospital regulations. Id. at 9, ¶5.

### C. The Parties' Arguments

#### 1. *Defendants' Arguments* (Dkt. No. 8)

The defendants move to dismiss under Fed. R. Civ. P. 12(b)(2) and 12(b)(5) for lack of personal jurisdiction due to insufficient service of process, arguing that while the plaintiff filed proofs of service showing that he'd served
6

the defendants via certified mail and U.S. mail with tracking, those methods of service are not sufficient under the federal rules. Dkt. No. 8 at 2. They recount that Fed. R. Civ. P. Rule 4(e) says that a plaintiff may effect service on an individual consistent with the law of the state in which the court is located or by delivering a copy to the individual personally, leaving a copy at the individual's abode with a person of suitable age and discretion or by delivering a copy to the individual's authorized agent. Id. at 9. The defendants maintain that for a corporate defendant (such as Aurora), Fed. R. Civ. P. 4(h) requires either that the plaintiff serve it in the same way Rule 4(e) requires service on an individual, or by delivering the summons and complaint to a registered agent of the defendant. Id. at 9-10. The defendants argue that the plaintiff's attempts to serve them by mail are insufficient under the federal rules and the relevant state statutes. Id. at 10-11. Because they maintain that the plaintiff has not effected proper service, the defendants argue the court lacks personal jurisdiction over them and must dismiss the case. Id. at 11.

As to the merits of the plaintiff's FCA claim, the defendants argue that the Attorney General may bring an FCA claim in the name of the United States, 31 U.S.C. §3730(a), id. at 2, or a private citizen acting in the capacity of a relator may bring *a qui tam* action in the name of the government, 31 U.S.C. §3703(b)(1), id. at 11. The defendants argue that the heightened pleading requirements of Fed. R. Civ. P. Rule 9(b) apply to *qui tam* FCA claims, and they argue that the plaintiff has not met that heightened standard because he has not alleged the FCA claim with the specificity required by the rule. Id. at 12.

The defendants argue that it is unclear under what section of the FCA the plaintiff purports to bring his claim. Id. According to the defendants, the plaintiff has not alleged the identity of the person or persons who allegedly made a knowing misrepresentation or who knowingly presented a false or fraudulent claim for payment or approval to the government. Id. at 13-14. As an example, the defendants recount that the plaintiff alleges that "it is well-documented that for many years prior to 9/9/2021, hundreds to thousands medically unnecessary and/or unconsented surgeries had been performed in the Defendant AURORA HEALTH CARE'S greater Milwaukee medical centers by several AURORA HEALTH CARE physicians." Id. at 14 (citing Dkt. No. 1 at 2, ¶3). They further recount that he alleges:

> (4) [t]hat at all times and places relevant herein, for several years prior to 9/9/2024, Defendant AURORA HEALTH CARE had full knowledge of such outrageous and longstanding practices of medically unnecessary and/or unconsented medical services through its well-documented unconditional support, it obvious non-transparent responses to various state and federal investigations concerning such reported practices as well as its totally improper receipt of millions of dollars revenue from such unlawful practices; which has resulted in countless serious post-operative complications and a few deaths.

Id. (citing Dkt. No. 1 at 2, ¶4). The defendants maintain that even if these allegations adequately plead "the falsity of some individualized transaction," there is nothing in the allegations linking the alleged false transaction to any government payment. Id. at 14.

Because the defendants argue that the plaintiff's federal claim fails as a matter of law, they ask the court to decline to exercise supplemental jurisdiction over the remaining state law clams and to dismiss them. Id. at 15

8

(citing Groce v. Eli Lilly & Co., 193 F.3d 496, 501 (7th Cir. 1999) ("The usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.")).

        2.    *Plaintiff's Opposition Arguments* (Dkt. No. 11)

The plaintiff's opposition brief contains additional allegations and eighty pages of exhibits labeled AA-KK. Dkt. Nos. 11 at 1; 11-2. Regarding service of process, the plaintiff insists that the court "will readily find and conclude that the Defendants' first assertion is totally unfounded; since it is well-documented that Plaintiff exercised more than reasonable due diligence in perfecting service of process on both named Defendants;" he also says that at the time of his opposition brief, Aurora had had reasonable actual notice for more than a year. Id. at 5. According to the plaintiff, the affidavit of the plaintiff's process server states that there were multiple attempts to serve Aurora "at its designated Milwaukee administrative office via personal service and via certified/registered mail" between September 20 and 27, 2024. Id. at 8. He argues that he fully complied with Wis. Stat. §180.0504(1) and (2) when he served the corporate registered agent on September 28, 2024 via U.S. registered/certified mail. Id. As for Dr. Luczowski, the plaintiff argues that Wis. Stat. §345.09(2) and (3) allow him to serve "by U.S. registered mail" a non-resident individual defendant at the out-of-state non-resident's address. Id. at 9.

The plaintiff labels the defendants' second argument—the argument that he does not state a viable FCA claim—as "totally absurd and presented in bad faith;" he asserts that he has alleged "longstanding and widespread unsafe

9

medical practices of unnecessary medical services by Defendant Aurora Health" and claims that Aurora has "received millions of dollars through fraudulent billing for said unnecessary medical surgeries/treatment under the Federal False Claims Act." Id. at 5-6. According to the plaintiff, the "unnecessary and/or unconsented surgeries" performed by Dr. Kamelle and Dr. Luczowski are documented in a whistleblower's complaint, a Wisconsin Watch news article and records that the plaintiff obtained online. Id. at 11. In addition to the other complaint and articles, the plaintiff attached to his opposition brief his computation of damages. Dkt. No. 11-2 at 56-72.

The plaintiff asks that if the court concludes that his complaint does not state a claim, it give him leave to amend. Dkt. No. 11 at 14. He also asks the court to exercise supplemental jurisdiction over his state law claims. Id. at 15-16.

### 3. *Defendants' Reply* (Dkt. No. 13)

The defendants reply that the exhibits do not supplement the factual allegations in the operative complaint and that they fail to save the plaintiff's FCA claim. Dkt. No. 13 at 2. Regarding service on Dr. Luczowski, the defendants point out that the plaintiff relies on statues that apply to circumstances not present in the plaintiff's case. Id. They point out that Wis. Stat. §345.09(3) applies to lawsuits arising out of motor vehicle accidents and allows for service on a non-resident using Wisconsin's highways by serving the Secretary of Transportation. Id. at 2-3. The defendants state, "Wisconsin law requires personal service through actual hand delivery rather than reliance on

10

the United States Mail. *See* Wis. Stat. § 801.11(1)(a)-(b); *Bergstrom v. Polk Cnty*, 331 Wis. 2d 678 [(Wis. Ct. App. 2011)]." The defendants allege that the plaintiff failed to properly serve Dr. Luczowski and ask that he be dismissed. Id. at 3.

Similarly, the defendants argue that the plaintiff has misread Wis. Stat. §180.0504, which allows for service by mail on a corporation if the corporation has no registered agent or its agent cannot with reasonable diligence be served. Id. at 3-4 (citing Wis. Stat. §180.0504(1) and (2)). Defendant Aurora explains that it has a registered agent. Id. The defendants assert that under Wis. Stat. §801.11(5)(a), instead of going to Aurora's corporate office, the plaintiff's process server should have personally served the registered agent at the registered agent's office. Id. at 4-5. The defendants argue that the plaintiff has not exercised reasonable diligence as shown by his own filings and ask that the court dismiss Aurora. Id. at 5.

The defendants ask the court to deny the plaintiff's request to amend his pleadings, arguing that none of the allegations he makes in his opposition or through his attached exhibits have anything to do with the care provided by Dr. Luczowski generally or to the plaintiff specifically. Id. at 6-7. According to the defendants, the complaints to the Wisconsin Department of Safety and Professional Services related to gynecological oncology care by a different physician at a different Aurora facility, not the plaintiff's podiatric care by Dr. Luczowski. Id. at 7. The defendants point out that there is no information in the DSPS/whistleblower exhibits that substantiates claims against Dr.

11

Case 2:24-cv-01108-PP    Filed 01/08/25    Page 11 of 19    Document 15

Luczowski or Aurora and no indication of false billing practices by Aurora related to Dr. Luczowski. Id.

    D.    Analysis

        1.    *Service*

The complaint alleges, and the plaintiff argues, that the plaintiff is bringing a claim under the False Claims Act. A plaintiff who seeks to bring a *qui tam* case under the FCA brings it "for the person and for the United States Government" and must file it "in the name of the Government." 31 U.S.C. §3730(b)(1). The complaint must be filed under seal, and the relator may not serve the complaint on the defendants until the court orders service. United States v. UCB, 970 F.3d 835, 841 (7th Cir. 2020) (citing 31 U.S.C. §3730(b)(2)). Because the plaintiff did not file a *qui tam* complaint under seal, and because the court has not authorized the plaintiff to serve that complaint, any form of service he effected was improper.

Even if the law allowed a plaintiff to serve an FCA complaint without court approval, the plaintiff's service by mail would have been improper under the Wisconsin statutes. The question of whether service is "proper" under the Federal Rules of Civil Procedure is not a question of whether the plaintiff exercised due diligence in trying to effect service. It is a question of whether the plaintiff followed the statutory requirements for properly effecting services.

If the court had ordered the plaintiff to serve the complaint on Aurora, he would have been required to comply with Wis. Stat. §801.11(5)(a), which requires the plaintiff either to personally serve an officer, director or managing

12

agent of the corporation by leaving a copy in the office of that officer, director or managing agent with the person who is apparently in charge of the office. Only if, after using reasonable diligence to serve as required by Wis. Stat. §801.11(5)(a), the plaintiff is unable to serve the defendant may the plaintiff serve an officer, director or managing agent "by publication and mailing . . . ." Wis. Stat. §801.11(5)(b). The plaintiff argues that his process server attempted to serve Aurora's associate general counsel, Attorney Stacie Andritsh, at Aurora's administrative offices before mailing the summons and complaint via first class mail to the registered agent. Dkt. No. 11 at 3. The plaintiff has presented no evidence that Attorney Andritsh is an "officer, director or managing agent" of Aurora. He has not described the efforts the process server made to serve any officer, director or managing agent of Aurora personally. He has not explained how the process server concluded that he could not personally serve an officer, director or managing agent of Aurora.

As for Dr. Luczowski, the plaintiff maintains that he properly served Dr. Luczowski by mail, but he cites a Wisconsin statute that applies to non-residents involved in motor vehicle accidents. See Wis. Stat. §349.09(3). If the court had ordered the plaintiff to serve the complaint on Dr. Luczowski, he would have been required to effect service as required by Wis. Stat. §801.11(1)(a)—by personally serving Dr. Luczowski (even though it appears that Dr. Luczowski lives in Oklahoma, per Dkt. No. 2 at 1). Only if the plaintiff exercised reasonable diligence in trying to personally serve Dr. Luczowski and failed could he leave a copy of the summons and complaint with a competent

13

member of the defendant's family or resident of the home. Wis. Stat. §801.11(1)(a)-(b). And only if reasonable efforts to do *that* failed could the plaintiff serve Dr. Luczowski by publication and mailing. Wis. Stat. §801.11(1)(c). The plaintiff skipped the first two steps and went straight to mailing, and even then, did not also provide proof of notice by publication.

    2. *Qui tam requirements*

A *pro se* plaintiff cannot prosecute a *qui tam* action under the FCA. Foster v. PHH Mortgage, Case No. 23-2297, 2024 WL 5103010, at *1 (7th Cir. Dec. 13, 2024) ("It is true that a plaintiff must have counsel to bring a qui tam suit in the district court."). To the extent that the plaintiff wants to pursue a claim under the FCA, he must hire counsel to represent him.

The FCA also includes a public disclosure bar that blocks suits involving allegations that already have been publicly disclosed, because the government can "vindicate society's interests" without the *qui tam* suit. Foster, 2024 WL 5103010, at * 2. The Seventh Circuit recently affirmed the dismissal of a *qui tam* suit based on allegations previously disclosed where the relator was not the original source of the information in the suit. Id. Here, the plaintiff alleges that Aurora has had full knowledge of the "outrageous and longstanding practices of medically unnecessary and/or unconsented medical services through its well-documented unconditional support" and its "obvious non-transparent responses" in various state and federal investigations concerning the practices. Dkt. No. 1 at 2. Aside from his allegations about his own surgery, the plaintiff admits in his opposition brief that he is relying on a prior

14

whistleblower complaint that was covered by the press and therefore publicly disclosed. The plaintiff is not the original source of the information underlying his putative claims against Dr. Kamelle or Aurora. In fact, the plaintiff asks the court to take judicial notice of a May 3, 2023 Wisconsin Watch news article discussing the claims filed with the Wisconsin Department of Safety and Professional Services giving rise to the prior FCA complaint filed by a physician. Dkt. No. 11 at 11. A plaintiff is an original source only "if he 'has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions' and 'voluntarily provided the information to the Government before filing an action.'" Foster, 2024 WL 5103010, at * 2 (quoting 31 U.S.C. § 3730(e)(4)(B)). Although the defendants did not argue that the public disclosure bar would block this suit, the fact that much of the information the plaintiff alleges appears to have been publicly disclosed prior to his filing this lawsuit is a problem.

The plaintiff attempts to combine his FCA claim with three individual, state law claims arising out of his September 9, 2021 surgery. The plaintiff alleges that Aurora should have known that Dr. Luczowski did not have the proper credentials, dkt. no. 1 at 3, that Dr. Luczowski committed an intentional medical battery on the plaintiff's foot, id. at 6, and that the defendants are liable for medical malpractice, id. at 8. The Seventh Circuit has explained that "*qui tam* litigation is subject to requirements that make combining it with a personal damages suit awkward." United States *ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 852 (7th Cir. 2009). For example, a

*qui tam* complaint cannot be served on the defendant until the United States has decided whether to intervene, whereas Fed. R. Civ. P. 4(m) requires a plaintiff suing on his own behalf to serve his complaint within ninety days. "The procedural differences between personal and *qui tam* litigation are so great that it is often impractical to pursue both claims in one suit—and sometimes impossible . . ." Id. Even if the plaintiff had been represented by counsel and had properly filed a *qui tam* FCA claim in the name of the government, the court likely would have had to sever the plaintiff's personal, state law claims based on his September 9, 2021 foot surgery.

Nor does the complaint state a claim under the FCA. Because the FCA is an antifraud statute, Rule 9(b)'s heightened pleading standard applies. United States *ex rel.* Mamalakis v. Anesthetix Management LLC, 20 F.4th 295, 301 (7th Cir. 2021). A person or entity violates the FCA "if it 'knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval' that is material to the government's decision on the use of federal funds." United States *ex rel.* Heath v. Wis. Bell, Inc., 75 F.4th 778, 782 (7th Cir. 2023) (citing 31 U.S.C. §3729(a)(1)(A)). In addition, a person or entity may violate the FCA by "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. §3729(a)(1)(B). Under either scenario, specific examples are required. United States *ex rel.* Sibley v. Univ. of Chi. Med. Ctr., 44 F.4th 646, 656 (7th Cir. 2022) (quoting Anesthetix Mgmt., 20 F.4th at 302). For example, a relator can survive a motion to dismiss by including allegations that are "detailed,

16

identifying specific doctors and procedures and describing why each procedure should not have been billed as medically directed." Anesthetix Mgmt., 20 F.4th at 303.

The operative complaint does not make any allegations of false billing practices by Aurora with respect to the podiatric care provided by Dr. Luczowski or Dr. Kamelle (who is not named as an individual defendant). The plaintiff has not identified anyone who knowingly presented or caused to be presented to the government a false or fraudulent claim for payment or approval. He pleads generally, in broad sweeping language, and refers to "hundreds to thousands" of medically unnecessary surgeries and "millions of dollars of revenue." Dkt. No. 1 at 2. There is nothing in the complaint linking these allegations to any government payment. Rather, he conflates his own surgery with the FCA allegations and infers that the "outrageous and longstanding practice of countless unnecessary/unconsented medical services [ ] were unconditionally supported and unlawfully benefitted by" Aurora. Dkt. No. 1 at 3.

The plaintiff's brief in opposition to the motion to dismiss contained additional allegations and exhibits; even if those were part of the original complaint, the complaint still would fail to set out the requisite "who, what, when, where, and how" of the allegedly false claims. Dkt. No. 11. The plaintiff purports to rely on a "whistleblower's complaint," but the complaint (and the news article about it) are nothing more than someone else's allegations in a complaint that—according to the defendants—was withdrawn in 2020 after the

17

government declined to intervene. Dkt. No. 13 at 7, n.2. That complaint involved allegations against Dr. Kamelle, who is not named as a defendant in this suit and who appears to have a gynecological practice unrelated to the plaintiff's foot surgery. The plaintiff attached a list of his medical expenses to his response but these include nothing more than the name of the provider, the dates of services and the amounts charged. Dkt. No. 11-2 at 56-72.

Without a FCA claim, this federal court has no basis for the exercise of federal subject-matter jurisdiction. Under 28 U.S.C. §1367—the supplemental jurisdiction statute—"courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). When a court has dismissed all federal claims, especially early in the litigation, federal courts generally relinquish jurisdiction over any remaining supplemental state law claims. Dietchweiler v. Lucas, 827 F.3d 622, 631 (7th Cir. 2016). The court declines to exercise supplemental jurisdiction over the remaining state law claims relating to the plaintiff's 2021 surgery.

## II. Plaintiff's Motion for Leave to Issue Subpoena (dkt. No. 12)

On October 30, 2024, the court received from the plaintiff a motion for leave to issue a subpoena for the production of records under Rule 45(c)(2), along with a proposed subpoena. Dkt. Nos. 12, 12-1. The plaintiff says that he has learned of similar whistleblower complaints filed with the HHS Office of the Inspector General in Washington D.C. but that he needs a subpoena to get copies. Id. at 2.

Because the plaintiff cannot proceed without an attorney on his FCA claim and because he hasn't properly filed or pled an FCA claim, the court will deny the plaintiff's motion as moot and will not issue the requested subpoena.

III. **Conclusion**

The court **GRANTS** the defendants' motion to dismiss. Dkt. No. 7.

The plaintiff **DENIES** the plaintiff's request to amend. Dkt. No. 11. For the reasons stated above—particularly because the plaintiff is representing himself and because he did not file the complaint in the name of the government and under seal—it would be futile for the court to allow the plaintiff to amend. Because the court has no basis for the exercise of federal subject matter jurisdiction, the court **DECLINES TO EXERCISE** supplemental jurisdiction over the plaintiff's state law claims.

The court **DENIES AS MOOT** the plaintiff's motion for leave to issue subpoena. Dkt. No. 12.

The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE** as to any claim that the plaintiff may have arising from his September 9, 2021 surgery.

Dated in Milwaukee, Wisconsin this 8th day of January, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**